(No. 90539

*In re* **J.J.** *et al.*, Minors (The People of the State of Illinois, Appellant, v. Phyllis J., Appellee).

*Opinion filed June 20, 2002.—Rehearing denied August 29, 2002.*

James E. Ryan, Attorney General, of Springfield, and Edward R. Danner, State's Attorney, of Lewistown (Joel D. Bertocchi, Solicitor General, William L. Browers, Mary Beth Burns and Lisa Hoffman, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, John X. Breslin and Rita Kennedy Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Susan O. Johnson, of Peoria, for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

The State filed a petition against the respondent, Phyllis J. (mother), alleging that her minor children were abused or neglected. It subsequently filed a petition in the circuit court of Fulton County to terminate the mother's parental rights under the Adoption Act (750 ILCS 50/1 *et seq.* (West 1998)). In part, the petition alleged that the mother exhibited habitual drunkenness for at least one year immediately prior to the commencement of the unfitness proceedings (see 750 ILCS 50/1(D)(k) (West 1998)). The circuit court found that the State proved the mother unfit by clear and convincing evidence. The mother appealed, and the appellate court reversed, holding that the finding of unfitness was against the manifest weight of the evidence. 316 Ill. App. 3d 817, 823.

This court is asked to clarify the proper time period for admitting evidence of habitual drunkenness and to determine whether the State met its burden of showing unfitness in this case by clear and convincing evidence. We find that the circuit court failed to apply the proper test for considering evidence of habitual drunkenness;

moreover, that if the proper test is applied, the State failed to satisfy its burden of proof. Thus, we conclude that the critical time period for presenting evidence of habitual drunkenness is the one year just prior to the filing of the State's termination petition and that the State failed to support its allegation of habitual drunkenness in this case by clear and convincing evidence.

## BACKGROUND

In April 1996, the State filed a neglect petition against the mother and her husband, alleging that their minor children were abused or neglected.[1] At the adjudicatory hearing held in June 1996, the mother admitted she had endangered the minors by the excessive use of alcohol and by engaging in physical altercations while under the influence of alcohol, as alleged in the State's supplemental petition. The circuit court found the minors abused or neglected and dismissed the other counts of the supplemental petition. At the dispositional hearing, the circuit court noted that the mother had made significant progress in improving her housing conditions and in acknowledging her alcohol problem, but transferred guardianship of the minors to the Department of Children and Family Services (DCFS). This order was filed on October 23, 1996.

Permanency review hearings were held on October 22, 1996, and again in April 1997. During the latter hearing, the circuit court agreed with the social worker assigned to the case, the guardian *ad litem*, and the mother's attorney that the mother was "making substantial progress."

At the next permanency hearing in September 1997, the social worker recommended that the children be returned home with close monitoring for six months because the mother had maintained an orderly house,

---

[1]The respondent's husband is not a party to this appeal.

dealt with her financial problems, taken part in an aftercare alcohol treatment program, attended parenting classes, and abstained from alcohol for eight months. The circuit court adopted this recommendation and returned physical custody of the children to the mother. In January 1998, the children were again removed from the home after an unidentified police officer reportedly found the mother intoxicated while caring for them. At permanency review hearings in March and November 1998, the mother was ordered to cooperate with DCFS or risk losing her parental rights.

On March 19, 1999, the State filed a petition to terminate the mother's parental rights on three grounds: (1) habitual drunkenness for at least one year immediately prior to the commencement of the unfitness proceedings (750 ILCS 50/1(D)(k) (West 1998)); (2) failure to make reasonable efforts to correct the conditions that resulted in the removal of the children (750 ILCS 50/1(D)(m) (West 1998)); and (3) failure to make reasonable progress toward the return of the children within nine months of an adjudication of abuse or neglect (750 ILCS 50/1(D)(m) (West 1998)). The only ground raised in this appeal is the mother's alleged habitual drunkenness (750 ILCS 50/1(D)(k) (West 1998)).

At the fitness hearing begun in August 1999, the State presented the testimony of Kelly Rockwell, a Catholic Social Services (CSS) worker recently assigned to the family. Her only direct knowledge of the mother's alcohol use was the mother's admission that she had consumed some unspecified amount of alcohol the night before a court hearing in May 1999. Rockwell offered no other specific evidence concerning that drinking incident. Nonetheless, the State had suspected the mother of intoxication and requested that she submit to a breath alcohol test. At the fitness hearing, the State stipulated that the Breathalyzer test given to the mother at that time resulted in a reading of zero.

Rockwell also testified about the contents of the case file and the mother's service plans, although the plans were never admitted into evidence. She testified that one of the mother's visits with the children was cancelled in July 1996, due to the mother's intoxication, and that CSS records indicated the mother was diagnosed as alcohol dependent in February 1997. Accordingly, the mother was instructed to abstain from alcohol and to attend Alcoholics Anonymous (AA) meetings, counseling at the Community Mental Health Center (CMHC), and parenting classes. The mother's file indicated that she did not completely satisfy any of these requirements.

The State also presented testimony from Terry Boughan, the mother's counselor at CMHC. He indicated that the mother had completed an inpatient treatment program in February 1997, and had been assigned to an outpatient aftercare program at CMHC meeting once a week. She stopped attending the outpatient sessions in November 1997, claiming first that she was ill and then that she had no transportation. Due to her failure to participate in the program, her treatment file was closed in February 1998. Boughan stated that he did not believe she was ready for discharge at that time. Boughan also testified that he believed the mother's reasons for failing to attend the sessions were credible and that she sincerely wanted treatment.

The mother testified on her own behalf, acknowledging that she drank some unspecified quantity of alcohol and missed weekly alcohol treatment sessions between October 1998 and March 19, 1999, even though her service plans required her to abstain from alcohol and to comply with the recommended treatment program. She stated that due to transportation problems she had attended only four or five AA meetings. She also testified that she did not completely abstain from alcohol until three or four weeks before her fitness hearing on

September 23, 1999, but she did not specify how often or how much she drank.

The circuit court found the State proved habitual drunkenness by clear and convincing evidence because it showed she "has had an alcohol dependency and *** she still consumes alcohol or at least until three weeks ago, and that addiction occurred for at least one year prior to the commencement of this termination petition." The court later concluded that it was in the best interests of the children to terminate her parental rights.

The mother appealed the unfitness finding, and the appellate court reversed, with one judge dissenting. The majority of the appellate court held that there was insufficient proof of the frequency and extent of the mother's drinking between March 19, 1998, and March 19, 1999, to show habitual drunkenness by clear and convincing evidence. 316 Ill. App. 3d at 823-24. The dissent argued that there was a sufficient showing to support the circuit court's finding because the mother continued to drink even after being told that abstinence was "a prerequisite to regaining custody of her children." 316 Ill. App. 3d at 827 (Homer, J., dissenting). We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

In this case, we are asked to consider the proper time frame for evidence of habitual drunkenness as well as whether the appellate court erred by reversing as against the manifest weight of the evidence the circuit court's finding that the mother was proven unfit by clear and convincing evidence (316 Ill. App. 3d at 823). Simply stated, the key to the resolution of this case is the use of the proper test, not the application of that test.

### I. Proper Evidentiary Time Frame

The parties disagree on the proper evidentiary time frame considered in determining whether a parent is

unfit due to habitual drunkenness. Under the Adoption Act, parental "unfitness" includes "[h]abitual drunkenness *** for at least one year immediately prior to the commencement of the unfitness proceeding." 750 ILCS 50/1(D)(k) (West 1998). The State argues that the statute permits the circuit court to consider evidence from both before and after this one-year period. The mother argues that only evidence within one year immediately prior to the filing of the State's petition may be considered.

The resolution of this issue requires us to construe section 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(k) (West 1998)). Since statutory construction is a question of law, we will review this issue *de novo*. *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

An unfitness proceeding begins when the State files a petition seeking the termination of parental rights. *In re D.D.*, 196 Ill. 2d 405, 417 (2001). The statute requires proof of habitual drunkenness for "*at least* one year immediately *prior to*" the filing. (Emphases added.) 750 ILCS 50/1(D)(k) (West 1998). This language permits consideration of evidence preceding the filing date by more than one year. It does not, however, preclude the consideration of evidence *after* the filing date in all cases. Evidence of habitual drunkenness arising after the filing of the initial petition may be considered if the State files an amended or subsequent petition. An additional filing is necessary because the termination of parental rights affects a fundamental liberty interest and, thus, must comport with the requirements of due process. See *In re M.H.*, 196 Ill. 2d 356, 362-63 (2001). The notice required in juvenile proceedings is the same as that constitutionally mandated in criminal or civil cases. *People v. R.D.S.*, 94 Ill. 2d 77, 81 (1983). "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must

'set forth the alleged misconduct with particularity.' " *In re Application of Gault*, 387 U.S. 1, 33, 18 L. Ed. 2d 527, 549, 87 S. Ct. 1428, 1446 (1967). Due to the serious nature of termination proceedings, it would be improper to raise additional allegations against a parent for the first time at the hearing. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7, 33 L. Ed. 2d 548, 556 n.7, 92 S. Ct. 2701, 2705 n.7 (1972) (" 'it is fundamental that except in emergency situations *** due process requires that when a State seeks to terminate [a protected] interest ..., it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective' " (emphasis in original)), quoting *Bell v. Burson*, 402 U.S. 535, 542, 29 L. Ed. 2d 90, 96, 91 S. Ct. 1586, 1591 (1971), quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 94 L. Ed. 865, 873, 70 S. Ct. 652, 656 (1950). Thus, another filing alleging the additional factual claims being made by the State would provide the parent with proper notice and allow the preparation of an appropriate defense.

We emphasize that while evidence of habitual drunkenness outside the one year before the filing of the State's petition may be considered, this option does not obviate the necessity of presenting clear and convincing evidence of the parent's habitual drunkenness *during* the one year immediately prior to that filing. In other words, if the evidence is insufficient to support a finding of habitual drunkenness during the critical one-year time period immediately prior to the filing of the termination petition, no amount of antecedent or subsequent evidence will sustain a finding of unfitness. While this requirement may initially seem onerous, it must be remembered that the State unilaterally possesses the power to choose when to file its petition and, thus, ultimately controls the critical evidentiary time frame.

Hence, at a minimum, the State must have proven by clear and convincing evidence that the mother in this case was habitually drunk between March 19, 1998, and March 19, 1999, when the petition was filed, without any reference to evidence either before or after that period. If this initial burden is met, the State may also present evidence showing that the parent was habitually drunk prior to or after that period as well.

II. Evidentiary Basis for the Finding of Unfitness

Next, the State contends that the circuit court's finding of unfitness is supported by sufficient evidence in the record. To support this contention, the State relies on the following facts: (1) the mother was diagnosed as alcohol dependent in 1996; (2) she knew that abstaining from alcohol and completing treatment were prerequisites for regaining custody of her children; (3) despite this knowledge, she drank alcohol as recently as three or four weeks prior to the fitness hearing and failed to complete the required treatment program; and (4) she lost custody of her children for the second time in January 1998, after an unidentified police officer reportedly found her intoxicated while supervising them.

On its face, the State's factual allegations may seem persuasive. Nevertheless, termination may only be justified when there is factual certainty. *Santosky v. Kramer*, 455 U.S. 745, 768, 71 L. Ed. 2d 599, 616, 102 S. Ct. 1388, 1402 (1982). After reviewing the record in this case, we find that only two points arguably pertain to the critical time period in this case, March 19, 1998, to March 19, 1999: (1) the mother's admission that she continued to drink some unknown quantity of alcohol at some unspecified times; and (2) her failure to continue her treatment program. Nonetheless, the State argues that, viewed together, the evidence shows that the mother had an uncontrollable problem with alcohol abuse for the requisite period of time. The State also claims that it did

not need to establish the precise frequency of the mother's drinking because frequency is merely an indicator of her inability to control her craving for alcohol.

Conversely, the mother argues the appellate court properly concluded that the circuit court's finding of unfitness was against the manifest weight of the evidence because there was no evidence of how often or how much the mother drank during the relevant time period. Without any evidence showing that she was unable to control her drinking, the State failed to meet its burden of proving habitual drunkenness by clear and convincing evidence.

To determine the propriety of the circuit court's finding of unfitness in this case, we must construe section 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(k) (West 1998)). The construction of a statute involves a question of law and is reviewed *de novo*. *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

The involuntary termination of a parent's rights is a drastic step that permanently severs the parent-child relationship. *Santosky*, 455 U.S. at 758-59, 71 L. Ed. 2d at 610, 102 S. Ct. at 1397; *In re C.N.*, 196 Ill. 2d at 208; *In re Adoption of Syck*, 138 Ill. 2d 255, 274 (1990); 750 ILCS 50/17 (West 1998). Personal choice in family matters affects a fundamental liberty interest protected by the fourteenth amendment of the United States Constitution. *Santosky*, 455 U.S. at 753, 71 L. Ed. 2d at 606, 102 S. Ct. at 1394. Fundamentally fair judicial procedures are critical for those parents facing the involuntary dissolution of their rights. *Santosky*, 455 U.S. at 753-54, 71 L. Ed. 2d at 606, 102 S. Ct. at 1395. The standard of proof is crucial since a parent's fundamental liberty interest cannot be protected if undue uncertainty is permitted in determining the facts supporting a termination of parental rights. *Santosky*, 455 U.S. at 757 n.9, 71 L. Ed. 2d at 609 n.9, 102 S. Ct. at 1397 n.9. Thus, the State

must demonstrate factual certainty when terminating a parent's rights. *Santosky*, 455 U.S. at 768, 71 L. Ed. 2d at 616, 102 S. Ct. at 1402. For this reason, clear and convincing evidence of unfitness is required before a court may involuntarily terminate parental rights. *In re C.N.*, 196 Ill. 2d at 208.

In Illinois, unfitness may be proved by establishing a parent's habitual drunkenness for the requisite period. 750 ILCS 50/1(D)(k) (West 1998). To prove habitual drunkenness, the State must present evidence that the individual (1) had a fixed habit of drinking to excess, and (2) used alcohol so frequently as to show an inability to control the need or craving for it. *In re D.M.*, 298 Ill. App. 3d 574, 580 (1998). Our review of the evidence in this case during the critical period between March 19, 1998, and March 19, 1999, reveals a complete dearth of evidence supporting the first prong of this test and minimal support for the second prong.

Only two witnesses offered evidence regarding the critical one-year period in this case. One was the mother herself. She admitted that she drank alcohol during the five months prior to the filing of the termination petition, but she provided no specific evidence of her alcohol consumption during this period. She also indicated that she did not attend alcohol treatment sessions as required by her service plans due to a lack of transportation. She testified that she requested help from CSS with transportation, but none was offered.

The only other witness who presented testimony relevant to this period was CSS worker Kelly Rockwell. Rockwell, only assigned to the family's case since May 1999, possessed no firsthand knowledge of the period between March 19, 1998, and March 19, 1999. She testified that she did not even meet the mother until April 1999. Due to her lack of direct knowledge, Rockwell deferred to the contents of agency records authored by

other CSS workers. In relevant part, she testified that CSS was in contact with the mother "[a]t least monthly" and that the mother received two unsatisfactory service plan ratings during the critical one-year period due to her failure to abstain from alcohol and to continue her treatment program. The State offered no other evidence of the mother's habitual drunkenness during this period.

Before this court, the mother argues that the State offered no competent evidence concerning the relevant time period. She contends that Rockwell's testimony was inadmissible hearsay because Rockwell had no firsthand knowledge of the service plans or case file during this period and that none of these records were ever admitted into evidence. See *In re A.B.*, 308 Ill. App. 3d 227, 236-37 (1999).

We reject the mother's hearsay argument because there was no objection to Rockwell's testimony at trial. Thus, the issue was first raised on appeal and, as such, it is waived. See *Wagner v. City of Chicago*, 166 Ill. 2d 144, 147 (1995).

Next, we note that the State requested the circuit court take judicial notice of the service plans. The judge declined, noting that only one plan was in the court file. Since the plans were never admitted into evidence, Rockwell's testimony provided the only evidence of the contents of the agency's case file or service plans.

The record clearly shows, however, that the circuit court did not rely on this testimony. Rather, the circuit court relied on the mother's unspecified "alcohol dependency," her admitted failure to continue alcohol treatment sessions, and her admission that she drank some amount of alcohol as recently as three weeks prior to the fitness hearing.

Moreover, Rockwell's testimony concerning the relevant period offered no evidence that the mother was ever under the influence of alcohol during the year prior

to the filing of the State's termination petition. Rockwell merely indicated that CSS was in monthly contact with the mother and rated two of her service plans unsatisfactory because she continued to drink and did not complete her treatment plans. We do not believe the former statement could have had an adverse impact on the mother's case because, if anything, it demonstrates her ongoing interest in working with the agency to regain custody of her children. We also believe that the latter statement, labeling the mother's lack of compliance with CSS requirements "unsatisfactory," was not unduly prejudicial. The basis for the unsatisfactory rating was the mother's admitted lack of compliance with CSS requirements. It was this lack of compliance, not the "unsatisfactory" label applied to it, that formed the basis of the State's allegation of unfitness. Under these circumstances, Rockwell's testimony did not affect the outcome of the hearing and does not provide grounds for reversing the circuit court's finding of unfitness. See *People v. Sims*, 192 Ill. 2d 592, 629 (2000).

### III. Propriety of the Unfitness Finding

Next, we turn to the merits of the State's claim that the circuit court's finding of unfitness in this case was supported by clear and convincing evidence. When reviewing a finding of unfitness, we must consider whether it is against the manifest weight of the evidence. A decision concerning a parent's fitness is against the manifest weight of the evidence if the opposite conclusion is clearly apparent. *In re D.D.*, 196 Ill. 2d 405, 417 (2001).

Here, the circuit court's finding of unfitness was based on the mother's history of "alcohol dependency," her failure to continue in the recommended aftercare program, and her acknowledgment that she drank some unspecified amount of alcohol prior to a few weeks before the fitness hearing. The circuit court failed to specify the

time period it employed in considering the mother's alcohol dependency. Moreover, the record reveals that the last time the mother was found to be "alcohol dependent" was 1997. Shortly thereafter, the mother's condition improved significantly enough for the caseworker to recommend, and the circuit court to order, that she regain custody of her children in September 1997. A stale diagnosis of alcohol dependency such as this one cannot support a termination petition.

After reviewing the factors relied on by the circuit court in this case, we find that vague references to a parent's alcohol dependence during some unidentified period, particularly when followed by a period of significant improvement, and a parent's consumption of some unidentified amount of alcohol sometime prior to the fitness hearing constitute mere speculation. Speculation is insufficient to support a finding of unfitness. A finding of unfitness must be premised on clear and convincing evidence proving that, at a minimum, the parent whose rights are at issue was habitually drunk during the critical one-year time period immediately prior to the filing of the State's termination petition. That standard was not met in this case. The factors relied on by the circuit court do not approach the degree of factual certainty required to support a finding of unfitness. See *Santosky*, 455 U.S. at 768, 71 L. Ed. 2d at 616, 102 S. Ct. at 1402.

While it is true that the precise amount and frequency of a parent's drinking need not be established to demonstrate habitual drunkenness (see 316 Ill. App. 3d at 827 (Homer, J., dissenting)), there must be clear and convincing evidence showing both that "the individual had a *fixed habit* of drinking *to excess*" (emphases added) and that the individual used alcohol *so frequently* as to show an inability to control the need or craving for it (see *In re D.M.*, 298 Ill. App. 3d at 580).

Here, the record shows only that the mother admit-

ted drinking some unspecified amount of alcohol during the review period even though she knew her service plan required abstinence. While this admission may be relevant to an analysis of the second prong of the test, requiring proof of the mother's inability to control her craving for alcohol, it provides weak evidence of that prong and no evidence of the first prong. The mother did not admit that she *habitually drank to excess.*

To prove the first prong of the test, the State must first show that the mother drank alcohol "to excess." While the exact amount of alcohol consumed in any specific instance need not be established, there must be clear and convincing evidence showing that she suffered significant impairment in her ability to supervise and parent her children due to the consumption of alcohol. No such showing was made in this case. In fact, the State's case includes nothing showing how the mother's fitness to parent her children was impaired by her drinking during the critical year.

Moreover, we note that any evidence of even one incident when the mother was observed to be under the influence of alcohol during the entire year in question is conspicuously absent. The only instance when the State suspected that the mother had used alcohol and subjected her to testing was in May 1999. Although this test was done after the critical period, it is noteworthy that the testing resulted in a reading of zero.

Even if the State had met its burden of proving by clear and convincing evidence that the mother drank alcohol to excess during the critical year, to prove the first prong of the test it was also required to present enough evidence to show that the mother drank to excess frequently enough for her drinking to be deemed "a fixed habit." Similarly, to prove the second prong of the test, the State had to present clear and convincing evidence that the mother drank frequently enough to demonstrate

an inability to control her craving for alcohol. While it is impossible to state the requisite frequency with precision, it is clear that in this case the State failed to meet its burden. The State did not present any evidence of how often the mother drank any amount of alcohol between March 19, 1998, and March 19, 1999. Her testimony indicated that she drank some alcohol during the relevant period, but it did not indicate that she drank frequently enough to constitute a "fixed habit" or to exhibit an uncontrollable craving for alcohol.

Generally, a finding of unfitness is entitled to deference and generally should be upheld. See *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991). Here, however, the utter absence of any evidence during the critical one-year period showing both a pattern of drinking sufficient to establish a "fixed habit" of alcohol consumption and an inability to control the need or craving for alcohol, combined with instances of the mother drinking to excess precludes a finding of habitual drunkenness. Since the State failed to meet its burden of proving habitual drunkenness by clear and convincing evidence, the appellate court properly reversed the judgment of the circuit court terminating the mother's parental rights.

## CONCLUSION

We hold that to prove an allegation of unfitness due to habitual drunkenness under section 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(k) (West 1998)), the State must, at a minimum, present clear and convincing evidence of habitual drunkenness during the critical one-year period immediately preceding the filing of its termination petition. In this case, the State failed to support its allegation of habitual drunkenness by clear and convincing evidence.

Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE THOMAS, dissenting:

I disagree with the majority's conclusion that the State did not prove respondent unfit by clear and convincing evidence. Further, I strongly disagree with the majority's construction of section 1(D)(k) of the Adoption Act—a construction that unnecessarily hinders the State's ability to present relevant evidence of parental unfitness.

## I. Evidentiary Time Frame

Section 1(D)(k) of the Adoption Act provides as a ground for parental unfitness "[h]abitual drunkenness *** for *at least* one year immediately prior to the commencement of the unfitness proceeding." (Emphasis added.) 750 ILCS 50/1(D)(k) (West 2000). I agree with the State's construction of this provision. That is, the State can introduce all relevant evidence of habitual drunkenness, but to meet its burden it must show that the problem has been occurring for *at least* one year.

The majority instead reads the one-year period in the statute as a distinct "critical" evidentiary period rather than as a minimum period. The majority makes several references to the "critical one-year time period" and requires the State to first present evidence relating only to this one-year period. Thus, the interpretation the majority settles on is that the State must first prove by clear and convincing evidence that the parent was habitually drunk during the one year immediately prior to the filing of the petition. 201 Ill. 2d at 245. Then, if the State meets that burden, it can introduce evidence of habitual drunkenness before the one-year period. 201 Ill. 2d at 245. However, the State can introduce evidence of habitual drunkenness occurring *after* the State filed its petition only if it files a second petition for termination alleging habitual drunkenness during a different time period. 201 Ill. 2d at 244.

I disagree with the majority on both points. First, if,

as the majority concedes, the statute allows "consideration of evidence preceding the filing date by more than one year," why do we arbitrarily restrict the State's ability to present that evidence until *after* it has proved what happened during the year immediately prior to the filing of the petition? Indeed, the majority holds that this evidence cannot be presented until after the State has proven by clear and convincing evidence that the parent was habitually drunk during the year prior to the filing of the petition. But, if the State had met that burden, why would it present additional evidence? At that point, it would have proved the parent unfit by clear and convincing evidence. The majority has effectively turned the one-year minimum time period into an absolute one-year period. The statute does not, however, refer to habitual drunkenness *within* a one-year period; it refers to habitual drunkenness for *at least* one year. These terms are not synonymous. When the legislature means "within" or "during" it uses those terms. To see this, one only has to count down two statutory subparts from the one at issue. See 750 ILCS 50/1(D)(m)(ii) (West 2000) ("to make reasonable progress toward the return of the child to the parent *within* 9 months after an adjudication of neglected or abused minor" (emphasis added)); 750 ILCS 50/1(D)(m)(iii) (West 2000) ("to make reasonable progress toward the return of the child to the parent *during* any 9-month period" (emphasis added)). The daunting task now facing the legislature is how to fix the statute in light of the majority's interpretation. The statute's meaning is already clear, and I cannot imagine how the legislature can fix it if this court persists in defining the phrase "for at least one year" as synonymous with "during a discrete one-year period."

Because the one-year period in the statute is merely a minimum time period, we should not restrict the State's ability to present its evidence in the manner it

sees fit. In the normal case, the most logical way for the State to present its evidence would be chronologically, beginning with the earliest episodes of drunkenness and any diagnosis of alcohol dependence. It might often be the case (as it is here) that the episodes occurring during the year immediately prior to the filing of the petition do not seem as significant unless they are considered in the context of the person's entire struggle with alcohol abuse.

In my opinion, the one-year period is a safeguard for respondents facing termination on this basis. It guarantees that they will not lose their parental rights over a few isolated incidents. Before the State may file its petition, it must have evidence that the problem with habitual drunkenness has been occurring for at least one year. It is not, however, a *limitation* on the evidence that the State can introduce, and the majority errs by characterizing it as such.

Second, I also disagree with the majority's assertion that, if the State wants to introduce evidence of the respondent's drunkenness occurring after it files its petition to terminate, it must file a new petition containing additional allegations. The majority claims that a respondent's due process rights would be violated by introduction of these "additional allegations." 201 Ill. 2d at 244. But these are not additional allegations. The phrase "habitual drunkenness *** for at least one year immediately prior to the commencement of the unfitness proceeding" has two distinct components. The first is the alleged parental problem: habitual drunkenness; the second is the *minimum* time the State must show the problem has been occurring: at least one year immediately prior to the commencement of the unfitness proceeding. Thus, all evidence the State has of the person's habitual drunkenness is relevant. If the State files a petition to terminate someone's parental rights because of habitual drunkenness, that person is on notice

that any relevant evidence of his or her drinking problem is going to be introduced. Does the majority seriously believe that a person facing termination of his or her parental rights because of habitual drunkenness is not on notice to stop drinking and, indeed, would be unfairly surprised by the introduction of evidence of drunkenness between the filing of the termination petition and the hearing?

In this case, the majority defines the "critical one-year period" as March 19, 1998, to March 19, 1999. Under the majority's analysis, if the State had evidence that the respondent was drunk on March 20, 1999, the State could not introduce this evidence unless it filed a new or amended petition alleging a new "critical one-year time period." I see no reason to make the State meet this additional procedural burden. If the State has a pending petition to terminate someone's parental rights because that person has been habitually drunk for at least one year, it should be able to introduce all available evidence of the person's drinking problem so that the trial court can make an informed decision.

Again, the above problems arise because the majority has taken a legislative requirement that the State have *sufficient* evidence of habitual drunkenness before proceeding with a termination petition and transformed it into an arbitrary *limitation* on the amount of evidence the State can introduce. The majority has turned the legislature's floor into a ceiling. I would hold that the meaning of the statute is simply that the State can introduce all relevant evidence of habitual drunkenness, but, to meet its burden, it must show that the problem has been going on for *at least* one year.

## II. Propriety of the Unfitness Finding

The majority's erroneous interpretation of section 1(D)(k) has led it to conclude that the State failed to meet its burden of proving that respondent was unfit

because of habitual drunkenness. Both parties approve of the two-part test for habitual drunkenness adopted by the appellate court in *In re D.M.*, 298 Ill. App. 3d 574, 580 (1998): there must be clear and convincing evidence that "the individual had a fixed habit of drinking to excess and [that] his usage was so frequent as to show an inability to control his need or craving for alcohol."[2] When all of the relevant evidence is considered, it is clear that the State established that respondent had a fixed habit of drinking to excess and used alcohol so frequently as to show an inability to control the need or craving for it.

In 1996, respondent admitted at the adjudicatory hearing that she had endangered her children by her excessive use of alcohol and by engaging in physical altercations while under the influence of alcohol. In August 1996, she was diagnosed as alcohol dependent. The basis for the diagnosis was that she met five of the seven DSM-IV factors for symptomatology of alcohol dependence. Specifically: (1) she used alcohol in larger amounts and for a longer period of time than intended; (2) she showed a persistent desire for alcohol and was unsuccessful in controlling her alcohol use; (3) she spent a significant amount of time and activity either to use alcohol or to recover from its effects; (4) alcohol use had negatively affected her major role obligations as a spouse and a parent; and (5) she had developed a marked increase in tolerance to the effects of alcohol. In September 1996, she was recommended for inpatient treatment

---

[2]Presumably, the majority is adopting this standard when it cites it as controlling authority. 201 Ill. 2d at 247. If we are going to adopt this two-part test as the standard for habitual drunkenness, I would prefer that the opinion include some analysis and an explanation of why we believe this test is appropriate. Instead, the majority seems to treat appellate court law as binding on this court. That said, I have no particular quarrel with the test the majority has adopted.

because she had been unable to maintain abstinence in an outpatient setting. She successfully completed an inpatient program at Riverside Robert Young Center in Rock Island and then began group meetings at the Community Mental Health Center of Fulton and McDonough Counties in February 1997. Respondent abstained from alcohol and went to treatment for eight months, following which her children were returned to her in late 1997.

In January 1998, the children were once again removed from respondent's custody when a police officer observed that respondent was intoxicated while caring for them. In February 1998, respondent was discharged from the mental health center because she had withdrawn from treatment. The last group session she attended was in November 1997. Significantly, when respondent testified, she admitted that she did not abstain from alcohol from October 1998 to April 1999, and, in fact, *had only quit drinking three to four weeks before the hearing that took place on September 23, 1999.* Further, in May 1999, she admitted to Kelly Rockwell that she had been drinking the night before a court hearing.

When all of this evidence is considered, the majority's claim that the State did not meet its burden must fail. Again, the majority reaches this erroneous conclusion because it improperly limits itself to considering only what happened between March 19, 1998, and March 19, 1999. When the evidence of what happened in that year is considered in light of respondent's entire history and struggle with alcohol addiction, as it should be, it is clear that respondent had been habitually drunk for at least one year.

Indeed, any drinking that respondent engaged in after her diagnosis of alcohol dependence is significant because she was ordered to abstain from alcohol and to continue treatment as requirements for keeping her

children. As the dissenting justice in the appellate court correctly pointed out, "[t]he refusal to abstain from alcohol consumption and to attend required treatment— even though such refusal would prevent respondent from regaining custody of her children—supports a finding that respondent used alcohol so frequently as to show an inability to control the need or craving for it [citation]." 316 Ill. App. 3d at 827 (Homer, J., dissenting). The majority downplays the significance of the respondent's admission that she had stopped drinking only a few weeks before the hearing because respondent did not admit that she habitually drank to excess. Again, the majority is refusing to look at this evidence in the proper context. Respondent had been diagnosed as alcohol dependent and had not been able to abstain from alcohol even when it meant losing custody of her children. Thus, the trial court was justified in placing significance on respondent's admission and could fairly conclude that it did not refer to an occasional glass of wine with dinner.

### III. Conclusion

Because the majority has improperly limited the evidence that can be introduced in proceedings to declare a parent unfit because of habitual drunkenness, and has erroneously concluded that the State failed to show by clear and convincing evidence that respondent had been habitually drunk for at least one year, I must dissent.

JUSTICES McMORROW and GARMAN join in this dissent.