THIRD DIVISION

    FILED: March 24, 2004

No. 1-03-0182

In re
 Dominique W., Donzell W., and    )   Appeal from the

Donquishae W., Minors )   Circuit Court of

(THE PEOPLE OF THE STATE OF ILLINOIS, )   Cook County. 

) 

Petitioner-Appellee, )

)   Nos. 95 JA 4846

v. ) 95 JA 4847

) 95 JA 4848

)

TIERIEL W., )   Honorable

) Candace J. Fabri,

Respondent-Appellant). )   Judge Presiding.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The respondent, Tieriel W., appeals from an order of the circuit court finding her unfit as a parent as defined in section 1(D)(b) of the Adoption Act of 1987 (Adoption Act) (750 ILCS 50/1(D)(b) (West 2000)) and pursuant to section 2-29 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-29 West 2000)), and terminating her parental rights to her minor children, Dominique W., Donquishae W., and Donzell W.  For the reasons which follow, we affirm.  

The respondent and Donzell G.
(footnote: 1) are the natural parents of  Dominique W. and Donquishae W., born on November 18, 1993; and Donzell W., born on April 27, 1995.  The respondent's family came to the attention of the Department of Children and Family Services (DCFS) in July 1995 when Donzell W. was hospitalized after suffering a seizure and water intoxication by reason of having been fed water instead of milk.  On July 18, 1995, the State filed petitions for adjudication of wardship of the children, alleging that they were abused and neglected due to the respondent's actions toward Donzell W.  That same day, the circuit court appointed the public guardian to serve as the children's guardian 
ad
 
litem
.  Following a temporary custody hearing held on July 21, 1995, the circuit court allowed the children to remain in the respondent’s custody under an order of protection.  

On January 26, 1996, however, the circuit court found that the respondent violated the order of protection when Donzell W. was again hospitalized, suffering from seizures as a consequence of the respondent feeding him inappropriately.  The court found that it was a matter of immediate and urgent necessity to remove the children from the respondent's care, and temporary custody of the children was awarded to the DCFS guardianship administrator. 

Following an adjudicatory hearing held on October 10, 1996, the circuit court found that the children had been neglected due to an injurious environment and abused due to substantial risk of physical injury as defined in the Juvenile Court Act (705 ILCS 405/2-3 (West 2000)).  After a dispositional hearing held on January 22, 1997, the court found that the respondent was unable to care for the children, adjudged them wards of the court, and appointed D. Jean Ortega Piron as their guardian.     

On April 14, 1997, on motion of the respondent, the circuit court entered an order of protection allowing her unsupervised day visitation with the children at the discretion of the DCFS.  A few months later, the court entered another order of protection allowing the respondent unsupervised overnight visitation with the children.  On July 28, 1998, the court entered a modified dispositional order finding the respondent fit, able, and willing to care for the minors, and returned custody of the children to the respondent under an order of protection. 

On February 17, 1999, the State filed an emergency motion for a finding of a violation of the order of protection.  The State alleged, 
inter
 
alia
,
 that the respondent was refusing to allow social workers access to the children when requested.  The court granted the State's motion and entered another dispositional order finding the respondent unable to care for Donzell W., Dominique W., and Donquishae W., and again adjudging them wards of the court. 

On September 10, 2001, the State filed supplemental petitions seeking the appointment of a guardian with the right to consent to the children's adoption (hereinafter "petitions for termination").  The petitions alleged, 
inter
 
alia
, that the respondent was an unfit parent as defined in section 1(D) of the Adoption Act and pursuant to section 2-29 of the Juvenile Court Act, based on her failure to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare.  750 ILCS 50/1(D)(b) (West 2000); 705 ILCS 405/2-29 (West 2000).  

A hearing on the State's petitions for termination commenced on August 8, 2002, and concluded on September 5, 2002.  The following evidence was presented at the hearing.

Yvette Grinstead, a caseworker from Catholic Charities, testified that she was assigned to the children's case in May 2000.

Grinstead stated that she reviewed the respondent's prior case file at that time, and learned that the respondent had visited the children sporadically from January 2000 through April 2000.  During this time, the children were under the care of their foster parent, Catherine W., who was also the respondent's aunt.  

The State admitted into evidence three service plans prepared by Grinstead.  The first of these service plans, dated February 8, 2001, covered the period of time from August 2000 through February 2001.  Grinstead gave the respondent an "unsatisfactory" rating for complying with the visitation plan.  She testified that, although the respondent completed 10 out of 12 visits from July 2000 through October 2000, she only visited the children sporadically once she completed her quota.  Grinstead further noted that the respondent's last visit with the children was on December 2, 2000.  According to Grinstead, the respondent did not see the children over the Christmas holidays nor on Dominique W. and Donquishae W.'s birthday. 

Grinstead next testified concerning the service plan dated August 15, 2001, which covered the period of time from February 2001 through August 2001.  Grinstead again gave the respondent an "unsatisfactory" rating during this time period because she had not visited her children since December 2000.  Grinstead stated that she spoke to the respondent by phone on April 5, 2001, and in May 2001.  She testified that the respondent did not ask for visitation during either conversation.  Further, the respondent did not send any gifts, cards, or letters to the children during this time.  According to Grinstead, on July 24, 2001, the children were placed under the care of foster parents, Aretha and Clarence Armstrong, who live across the street from Catherine W.  

Finally, Grinstead testified concerning the service plan dated February 14, 2002, which covered the period of time from August 2001 through February 2002, when the children were living with the Armstrongs.  With respect to visitation, Grinstead gave the respondent an "unsatisfactory" rating, noting that she had not visited her children during this time.  Grinstead testified that, from the time the children began living with the Armstrongs in July 2001, the only time the respondent called to request a visit was on April 4, 2002.  However, when Grinstead called the respondent back to schedule the visit, she received a recording stating that the telephone customer was unavailable.  Grinstead sent the respondent a letter, but never heard back from her.      

Catherine W. testified that she had been the children's foster parent for six years until the Armstrongs became their foster parents in July 2001.  During this time, the respondent called her "off and on" and Catherine W. herself called the respondent to schedule visits with the children.  In January 2001, the respondent visited the children at Catherine W.'s house and brought toys for them.  The visit in January, however, was the last time the respondent visited the children while they were living with Catherine W.  Catherine W. stated that she had several conversations with the respondent in February 2001 and March 2001, but the respondent never came to visit the children.  In June 2001, respondent called Catherine W. three or four times to schedule visits, but they never took place.  Catherine W. stated that, when she called the respondent after the missed visits, the respondent stated that she could not visit the children because she could not find a babysitter to look after her other children.  In July 2001, the respondent called twice about scheduling visits, but could not attend for the same reason. 

Catherine W. stated that she became the children's babysitter after the Armstrongs became their foster parents.  She stated that she still has contact with the respondent, and that the respondent asks about the children's well-being.  Finally, Catherine W. testified that, although visitation "kind of slacked" during the prior year and a half, the respondent visited the children on a weekly basis prior to Grinstead taking over as the children's caseworker.

Aretha Armstrong testified that, when she became the children's foster parent in July 2001, Grinstead was supposed to pick up the children from her house, and take them to Catholic Charities to visit with the respondent.  According to Armstrong, from July 24, 2001, through April 3, 2002, the respondent did not visit the children.  Armstrong testified that the respondent did not send any gifts, cards, or letters to the children during this time either.  Following Armstrong's testimony, both the State and the public guardian rested.  The respondent did not present any testimony.   

On September 5, 2002, the circuit court denied the State's petitions for termination.  In so doing
, the court held that it was precluded from considering evidence of the respondent's conduct after September 10, 2001, the date on which the State filed its petitions for termination, in determining whether the respondent failed to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare.   

On September 27, 2002, the public guardian filed a motion for reconsideration of the circuit court's September 5, 2002, order.  A hearing on the motion took place on November 8, 2002.  A transcript of the proceeding on that date, however, is not included in the record on appeal.  The matter was continued to November 14, 2002, on which date the circuit court granted the public guardian's motion to reconsider, holding that it was not precluded 
from considering evidence after the State filed its petitions for termination.  As a consequence, the court reversed its prior ruling and found that the State had proved by clear and convincing evidence that the respondent was an unfit parent as defined in section 1(D)(b) of the Adoption Act and pursuant to section 2-29 of the Juvenile Court Act.

A dispositional hearing regarding the best interests of the children was held on December 10, 2002, and December 17, 2002.  Grinstead testified that she was still the caseworker for the children and that they were still living with the Armstrongs.  Grinstead, having observed the children interact with the Armstrongs, described their relationship as a "typical positive parent and child relationship based on love, nurturance, and respect."  She stated that the children refer to the Armstrongs as "mom" and "dad", and they appear to be well-bonded with the Armstrongs' children.  According to Grinstead, the Armstrongs wish to adopt Donzell W., Dominique W., and Donquishae W.  Grinstead stated that she spoke to the children about adoption the day before the hearing, and they told her that they wished to stay with the Armstrongs. 

Grinstead testified that, since the Armstrongs became the children's foster parents in July 2001, the respondent visited them on only two occasions.  The first visit took place on September 19, 2002.  That visit was safe and appropriate, and the children were happy to see the respondent because they had not seen her for some time.  Donzell W., however, told Grinstead that he did not want to live with the respondent, and Grinstead explained to him that he was just going to visit her, and that he would return to the Armstrongs.  Grinstead testified that the respondent missed a visit scheduled for October 17, 2002.  The respondent called a week later to say that she forgot to confirm the visit.  The next visit with the children took place on November 27, 2002.  Grinstead stated that the visit was also safe and appropriate.  However, it was Dominique W. and Donquishae W.'s birthday a week earlier, and the respondent did not bring any gifts.  According to Grinstead, the respondent has not sent any gifts, cards, or letters to the children since they were placed under the Armstrongs' care.  With respect to phone calls, Grinstead testified that the respondent has spoken to the children on two occasions since September 19, 2002.  Grinstead stated that the phone calls were initiated by Catherine W., and not the respondent. 

Grinstead opined that it is in the best interests of the children that the respondent's parental rights be terminated and that they be made available for adoption.  She based her opinion on the fact that the children are receiving love and nurturance from the Armstrongs, and they have been living in a stable home environment for the past year.  Further, the children have a loving bond with Catherine W., who lives across the street, and they are living in the same community that they have been living in for the past six years.  Grinstead testified that, after observing the children with the Armstrongs and with the respondent, she believes that the children have a stronger bond with the Armstrongs because they have a parent-child relationship; whereas, the respondent and the children relate more as friends.  Following Grinstead's testimony, both the State and the public guardian rested.      

The respondent testified on her own behalf.  She stated that, while her children were living with Catherine W. from January 2001 until July 2001, she called her children on the phone.  The respondent testified that she did not visit her children during this time because she was having a difficult pregnancy and needed bed rest.  She further stated that she did not have a car, and had problems taking her other two children to the visits.  She admitted, however, that she did not inform Grinstead of any transportation problems.  The respondent testified that, after the Armstrongs became the children's foster parents, she "kind of gave up" and did not believe she had a chance to regain custody of them.  She admitted that she did not send the children any gifts, cards, or letters during this time. 

According to the respondent, the children were happy to see her at the September 19, 2002, visit.  Dominique W. asked her when she was moving into her own house so she could come there to stay.  With respect to the November 27, 2002, visit, the respondent testified that she had bought birthday gifts for Dominique W. and Donquishae W., but had left them at home.  The respondent admitted, however, that she never sent the gifts to the children.  According to the respondent, she has called Catherine W. seven or eight times within the last six months attempting to arrange phone calls with the children.  Finally, the respondent stated that she still loves her children and wants to try to have a relationship with them.   

Catherine W. also testified on behalf of the respondent.  According to Catherine W., when the children left her care in July 2001, the respondent had a good bond with them.  She further stated that the children and the Armstrongs have a loving bond and are happy together.  Catherine W. believed that it was in the best interests of the children to stay with the Armstrongs because they are in school and are doing well.  She stated that "it would be a bit too much" for the respondent if the children were returned to her.  Catherine W. acknowledged, however, that the children should still have some contact with the respondent.     

On December 23, 2002, the circuit court found that it was in the best interests of the children to terminate the respondent's parental rights.  Accordingly, the court terminated the respondent's parental rights based on its prior finding of unfitness under section 1(D)(b) of the Adoption Act and the best interests of the children.  The respondent now appeals.

The respondent argues that: (1) the State's petitions for termination are legally insufficient and fail to allege that she was an unfit parent; (2) the circuit court erred in considering her conduct after the date on which the State filed its petitions for termination in making its finding of unfitness; and (3) the circuit court's decision that it was in the best interests of the children to terminate the respondent's parental rights is against the manifest weight of the evidence.

Before turning to the respondent's arguments on appeal, we address the public guardian's motion for affirmance pursuant to Supreme Court Rule 23(c) (166 Ill. 2d R. 23(c)), which we have taken with the case.  In his motion, the public guardian argues that the record on appeal is incomplete, as it does not contain all of the transcripts from the proceedings below.  Specifically, the public guardian alleges that the record does not contain the transcript from November 8, 2002, on which date the parties argued their positions with respect to the public guardian's motion to reconsider the circuit court's initial September 5, 2002, order denying the State's petitions for termination.  The public guardian acknowledges that the record contains an affidavit from the court reporter, wherein she averred that she conducted a thorough and diligent search of her notes, but could not find a record of proceedings from that date.  He argues, however, that the respondent should have filed a bystander's report of the proceedings.  Although the record does not contain the November 8, 2002, transcript, we note that at most legal argument was presented on that date.  Moreover, the transcript from November 14, 2002, on which date the circuit court rendered its ruling on the motion to reconsider, is contained in the record.  Accordingly, we believe that the omission of the November 8, 2002, transcript is not fatal to the respondent's case.  See 
Dubey v. Abam Building Corp.
, 266 Ill. App. 3d 44, 46, 639 N.E.2d 215 (1994) (even an incomplete record does not preclude a reviewing court from determining whether a trial court's findings or rulings are correct where that determination can be made from the incomplete record presented).  

 The public guardian also claims in his motion that the December 10, 2002, and December 17, 2002, transcripts from the best interests hearing were missing from the record.  The public guardian argues in his appellate brief that, although the respondent filed motions requesting to file copies of these transcripts in this court, the respondent's brief was prepared without the transcripts, and, therefore, the respondent's arguments were made without a complete record.  We note, however, that on November 6, 2003, we allowed the respondent to supplement the record with the transcripts of the proceedings on December 10, 2002, and December 17, 2002, and further allowed her to file a substitute brief.  Accordingly, we reject the public guardian's argument in this regard.  We now turn to the arguments raised by the respondent on appeal.  

The respondent first contends that the State's petitions for termination are legally insufficient to allege that she was an unfit parent.  Specifically, she claims that the petitions merely recited the statutory language of section 1(D)(b), without alleging any specific facts of misconduct.  The respondent admits that she failed to raise the alleged pleading defect in the circuit court, and acknowledges that section 2-612(c) of the Code of Civil Procedure provides that failing to object to a pleading defect in the circuit court waives review of that issue on appeal.  See 735 ILCS 5/2-612(c) (West 2000).  She urges this court, however, to review this issue under the plain error doctrine.  We find that this issue is waived.  Waiver aside, the respondent's argument in this regard has no merit. 

The essential test of the sufficiency of a State's petition for termination is whether it reasonably informs a respondent of a valid claim against her.  
In re M.S.
, 210 Ill. App. 3d 1085, 1092, 569 N.E.2d 1282 (1991).  It is well-settled that the requirement of pleading with specificity does not require more than setting forth the specific statutory ground of unfitness.  
In re Dragoo
, 96 Ill. App. 3d 1104, 1107, 422 N.E.2d 263 (1981); 
In re G.W.S.
, 196 Ill. App. 3d 107, 109, 553 N.E.2d 85 (1990); 
In re L.M.
, 205 Ill. App. 3d 497, 504, 563 N.E.2d 999 (1990); 
In re M.S.
, 210 Ill. App. 3d at 1092-93; 
In re Andrea D.
, 342 Ill. App. 3d 233, 242, 794 N.E.2d 1043 (2003). 

Here, the State alleged in its petitions for termination that the respondent was unfit in that she "failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare, in violation of 750 ILCS 50/1 D(b) and 705 ILCS 405/2-29."  By clearly setting forth the specific statutory ground of unfitness, which is all that was required in the pleading, the State's petitions were sufficient to apprise the respondent of the charge against her.  See 
In re M.S.
, 210 Ill. App. 3d at 1092-93; 
In re Andrea D.
, 342 Ill. App. 3d at 242.

We next address the respondent's contention that the circuit court erred in finding her unfit under section 1(D)(b) of the Adoption Act.  Specifically, section 1(D)(b) allows a finding of unfitness based on a parent's "[f]ailure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare."  750 ILCS 50/1(D)(b) (West 2000).  In making her argument, the respondent essentially concedes that there was sufficient evidence after September 10, 2001, the date on which the State filed its petitions for termination, to support a finding of unfitness under section 1(D)(b).  Her argument on appeal is limited to the narrow question of whether it was proper for the circuit court to consider her conduct after the State filed its petitions for termination in making its determination as to unfitness under section 1(D)(b).   

The State and public guardian point out that this precise issue was addressed by the court in 
In re N.H.
, 175 Ill. App. 3d 343, 529 N.E.2d 1115 (1988) and 
In re L.M.
, 205 Ill. App. 3d 497, 563 N.E.2d 999 (1990).  In 
In re N.H.
, the circuit court found the respondent unfit pursuant to section 1(D)(b), and, in doing so, expressly considered his conduct from the date on which the State filed its petition for termination through the date of the termination hearing.  In determining that the circuit court could consider this evidence, the court in 
In re N.H.
 stated that the respondent's subsequent failure to make visitations "further added" to the evidence establishing his failure to maintain a reasonable degree of interest in his child.  
In re N.H.
, 175 Ill. App. 3d at 346.  Subsequently, in 
In re L.M.
, 205 Ill. App. 3d 497 (1990), the respondent argued that, in making its determination as to unfitness, the circuit court improperly refused to exclude as irrelevant evidence of occurrences arising after the date the State filed its petition for termination.  The court, applying the holding in 
In re N.H.
, rejected the respondent's argument, stating that "this court has already determined that matters occurring right up to the date of the hearing on termination of parental rights may properly be considered."  
In re L.M.
, 205 Ill. App. 3d at 506-07. 

The respondent acknowledges the court's holdings in 
In re N.H.
 and 
In re L.M.
  She argues, however, that the facts in 
In re N.H.
 are distinguishable because, in that case, sufficient evidence existed before the State filed its petition for termination to support a finding of unfitness under section 1(D)(b).  The respondent similarly maintains that, in 
In re L.M.
, there is no indication that the only evidence supporting the finding of unfitness came from the period of time after the State's petition for termination was filed.  The respondent argues, instead, that the supreme court's decision in 
In re J.J.
, 201 Ill. 2d 236, 776 N.E.2d 138 (2002), is dispositive of the question of whether the circuit court can consider a respondent's conduct subsequent to the date on which the State files its petition for termination in making a finding of unfitness under section 1(D)(b).  

In 
In re J.J.
, the court determined the proper time frame for considering evidence under section 1(D)(k) of the Adoption Act, which provides that a finding of unfitness may be based on a parent's habitual drunkenness.  The court noted that section 1(D)(k) requires proof of habitual drunkenness "for at least one year immediately prior to the commencement of the unfitness proceeding."  750 ILCS 50/1(D)(k) (West 2000).  The court went on to say that the respondent had notice that she must defend against evidence of her actions from March 19, l998, to March 19, 1999, the date on which the State filed its petition for termination.  However, due to the serious nature of termination proceedings, the court reasoned that it would be improper to raise additional allegations against a parent for the first time at the hearing.  Accordingly, the court held that evidence of habitual drunkenness arising after the filing of the State's initial petition could only be considered if the State filed an amended or subsequent petition.  The court reasoned that an amended petition alleging the additional factual claims being made would provide the parent with proper notice and allow the preparation of an appropriate defense.  
In re J.J.
, 201 Ill. 2d at 243-44.  Relying on the court's holding in 
In re J.J.
, the respondent contends that the circuit court in this case could only consider her conduct after September 10, 2001, if the State had amended its petitions for termination to include additional factual claims reflecting the subsequent time period. 

We find the defendant’s reliance on 
In re J.J.
 to be misplaced.  Section 1(D)(k) defines a time frame during which the State must provide evidence of habitual drunkenness; namely, one year prior to the filing of the State's petition for termination.  In addition to section 1(D)(k), the legislature has specified a number of different time periods for other grounds of unfitness under section 1(D) of the Adoption Act.  See 
e.g.
, 750 ILCS 50/1(D)(c) (West 2000) ("Desertion of the child for more than 3 months next preceding the commencement of the Adoption proceeding"); 750 ILCS 50/1(D)(l) (West 2000) ("Failure to demonstrate a reasonable degree of interest, concern or responsibility as to the welfare of a new born child during the first 30 days after its birth"); 750 ILCS 50/1(D)(m) (West 2000) ("Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor ***").  Section 1(D)(b), which is the statutory ground at issue in this case, however, provides no such evidentiary time frame. 

The fundamental rule of statutory construction is to ascertain and give effect to the intention of the legislature.  
In re D.L.
, 191 Ill. 2d 1, 9, 727 N.E.2d 990 (2000).  The language of the statute is the best indication of legislative intent, and our inquiry appropriately begins with the words used by the legislature.  
In re D.L.
, 191 Ill. 2d at 9
.  Where the language of a statute is clear and unambiguous, a court must give it effect as written, without "reading into it exceptions, limitations or conditions that the legislature did not express."  
In re D.L.
, 191 Ill. 2d at 9. 

The language in section 1(D)(b) is clear and unambiguous.  The section provides that a finding of unfitness may be based on a parent's "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare."  750 ILCS 50/1(D)(b) (West 2000).  Had the legislature intended that a court only consider the period of time before the petition for termination is filed, it would have stated so, as it did in section 1(D)(k).  Likewise, had the legislature intended that the State needed to prove a lack of interest, concern or responsibility for a particular duration of time, it likewise would have included such a limitation as it did in section 1(D)(m).  As stated, the legislature included no evidentiary time limitation whatsoever in section 1(D)(b), and we will not read one into the statute.  Because section 1(D)(b) does not contain any time limitation, the notice considerations at issue in 
In re J.J.
, are not implicated in the instant case.    

Based on the decisions in 
In re N.H.
 and 
In re L.M.
, and the plain language of section 1(D)(b), we conclude that the circuit court was not precluded from considering evidence of the respondent's conduct after the State filed its petitions for termination in making its finding of unfitness under section 1(D)(b) of the Adoption Act.   As stated, the respondent does not dispute that there was sufficient evidence after that date to support the court's finding of unfitness.  Accordingly, we conclude that the circuit court's finding of unfitness based on section 1(D)(b) of the Adoption Act is not against the manifest weight of the evidence.  

Finally, the respondent contends that the State failed to prove that terminating her parental rights was in the best interests of the children.  Specifically, the respondent argues that the evidence failed to show any benefit to the children from terminating her parental rights, and did not reveal that continued contact with her would harm them. 

Once the circuit court finds that a parent is unfit, it must then determine whether termination of parental rights is in the best interests of the child.  
In re J.T.C.
, 273 Ill. App. 3d 193, 199, 652 N.E.2d 421 (1995).  In making this determination, the court is required to consider the following factors:  the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background; the child's sense of attachment, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; the child's wishes; the child's ties to his community; the child's need for permanence including his need for stability and continuity of relationships with parent figures and other relatives; the uniqueness of every family and child; the risks related to substitute care; and the preferences of the person available to care for the child.  705 ILCS 405/1-3(4.05) (West 2000).  

The parties disagree over the appropriate standard of review to be applied in reviewing a circuit court's determination as to the best interests of a child.  It is true that certain divisions of this court have reviewed a circuit court's decision in this regard under an abuse of discretion standard (see 
In re E.C.
, 337 Ill. App. 3d 391, 401, 786 N.E.2d 590 (2003); 
In re D.L.
, 326 Ill. App. 3d 262, 270-71, 760 N.E.2d 542 (2001); 
In re D.H.
, 323 Ill. App. 3d 1, 13, 751 N.E.2d 54 (2001); 
In re Jason U.
, 214 Ill. App. 3d 545, 550, 574 N.E.2d 90 (1991)), while other divisions of this court have elected to review the issue under a manifest weight of the evidence standard  (see 
In re Gwynne P.
, Nos. 1-03-1427 & 1-03-1601 (cons.), slip op. at 16 (February 24, 2004); 
In re J.B.
, No. 1-03-0178, slip op. at 8 (January 22, 2004); 
In re C.M.
, 319 Ill. App. 3d 344, 360, 744 N.E.2d 916 (2001); 
In re Sheltanya S.
, 309 Ill. App. 3d 941, 955, 723 N.E.2d 744 (1999)).  We believe that, under either standard of review, the circuit court's determination as to the children's best interests in this case was proper. 

The evidence presented at the best interests hearing showed that the children were living with Catherine W. for six years, until the Armstrongs became their foster parents in July 2001.  Grinstead described the relationship between the Armstrongs and the children as a positive parent and child relationship based on love, nurturance, and respect.  According to Grinstead, the children had more of a friendship, rather than a parent and child, relationship with the respondent.  She stated that the children refer to the Armstrongs as "mom" and "dad", and they appear to be well-bonded with the Armstrongs' children.  Grinstead testified that the Armstrongs wish to adopt Donzell W., Dominique, W., and Donquishae W., and the children wish to stay with the Armstrongs.  Grinstead opined that it is the best interests of the children that the respondent's parental rights be terminated.  She based her opinion on the fact that the children reside in the Armstrongs' home, where they are living in a stable environment and which is also in the same community where they have been living for the past six years.  Further, the children have a loving bond with Catherine W., who lives across the street and also serves as their babysitter. Catherine W. similarly testified that the children have a loving bond with the Armstrongs, and that it is in the best interests of the children to stay with them because they are in school and were doing well. 

Taking all of the statutory factors into consideration, we find that the circuit court's determination that terminating the respondent's parental rights was in the best interests of the children was neither an abuse of discretion nor contrary to the manifest weight of the evidence.   

Affirmed.

SOUTH and HALL, JJ., concur.  
 

FOOTNOTES
1: Donzell G.'s parental rights were also terminated; however, he is not a party to this appeal.