NOTICE

Decision filed 06/22/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 200077-U

NOS. 5-20-0077, 5-20-0078, 5-20-0079 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* R.S. Jr., T.S., and J.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 18-JA-01, 18-JA-02, |
| | ) | 18-JA-03 |
| | ) | |
| Raymond S. Sr. and Kathryn V., | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| Respondents-Appellants). | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Overstreet concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's findings that the respondents were unfit persons and that termination of their parental rights was in the minor children's best interests were not contrary to the manifest weight of the evidence.

¶ 2    The respondents, Raymond S. Sr. and Kathryn V., are the parents of R.S. Jr.,[1]
T.S.,[2] and J.S.[3] (minor children). On February 4, 2020, the circuit court found the respondents to be unfit persons and terminated their parental rights finding that the

_____

[1]Born on January 28, 2009.
[2]Born on April 8, 2014.
[3]Born on December 13, 2016.

1

termination of the respondents' parental rights was in the best interests of the minor children. Kathryn appeals arguing that the State failed to prove that she was an unfit person for having an addiction to drugs and failed to prove that she did not make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect. Raymond appeals arguing that the State failed to prove that he was an unfit person by clear and convincing evidence and that the State failed to prove that the termination of his parental rights was in the best interest of the minor children. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                I. BACKGROUND

¶ 4     On January 2, 2018, the State filed a juvenile petition[4] pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2018)). The juvenile petition alleged that the minor children were neglected as defined in section 2-3(1)(a) of the Act because (1) the respondents had substance abuse issues which impaired their ability to adequately care for the minor children, and (2) that the respondents failed to cooperate with the terms of Chestnut housing and were in jeopardy of losing their housing. *Id.* § 2-3(1)(a). The juvenile petition also alleged that the minor children were neglected as defined in section 2-3(1)(b) of the Act because (1) Kathryn had mental health issues that

---

[4]A juvenile petition was filed on behalf of each minor child in their respective case (R.S. Jr., 18-JA-01, 5-20-0077; T.S., 18-JA-02, 5-20-0078; and J.S., 18-JA-03, 5-20-0079). The common law records do not contain a circuit court order consolidating the cases; however, the records indicate that circuit court proceeded with the three separate cases as a single matter. As such, we will refer to the filings on behalf of the minor children collectively without separately indicating to which minor child the filing applied unless the filings differ or such clarification is needed for the analysis.

2

were not being addressed and (2) the respondents had failed to cooperate with family services. *Id.* § 2-3(1)(b).

¶ 5 On February 20, 2018, the respondents appeared and admitted to the allegations contained in the juvenile petition. On motion of the parties, and without any objection, the circuit court entered an order for continuance of the case under the supervision rules[5] for a period of 12 months. The same day, the circuit court appointed a guardian *ad litem* for the minor children and appointed counsel to represent Kathryn.

¶ 6 On April 16, 2018, the State filed a request for a juvenile warrant pursuant to section 2-5(2) of the Act stating that the circumstances of the home environment endangered the minor children. *Id.* § 2-5(2). On April 17, 2018, the circuit court appointed separate counsel to represent Raymond and conducted a hearing. The circuit court found that the Department of Children and Family Services (DCFS) had made reasonable efforts to keep the minor children in the home but that DCFS's efforts had not eliminated the necessity for the removal of the minor children because, *inter alia*, Kathryn had tested positive for cocaine and Raymond had tested positive for cocaine and cannabis. The circuit court issued a temporary custody order pursuant to section 2-10 of the Act (*id.* § 2-10), placing the minor children into the temporary custody of DCFS.

¶ 7 On July 10, 2018, after a hearing, the circuit court entered a dispositional order finding that the minor children suffered from a lack of support, education, and remedial

---

[5]Section 2-20 of the Act provides that a court may enter an order of continuance under supervision upon a party's admission of the facts supporting the juvenile petition. The minor child is permitted to remain in the home subject to such conditions and supervision as the court may require by order. 705 ILCS 405/2-20 (West 2018).

care as defined by section 2-3(1)(a) of the Act and that the minor children were in an environment that was injurious to their welfare as defined by section 2-3(1)(b) of the Act. *Id.* § 2-3(1)(a), (b). The circuit court directed that the minor children remain in the custody of DCFS and further directed the respondents to comply with the terms of the service plan or risk termination of their parental rights.

¶ 8 The circuit court conducted a permanency hearing on December 18, 2018, and entered an initial permanency order pursuant to section 2-28 of the Act. *Id.* § 2-28. The initial permanency order indicated that the respondents had not completed all of their service plan tasks nor made reasonable and substantial progress towards returning the minor children home. The circuit court did, however, find that the respondents had made reasonable efforts towards returning the minor children home. The initial permanency order directed that the minor children remain in the custody of DCFS with a permanency goal of returning home within 12 months.

¶ 9 On March 7, 2019, the circuit court conducted a hearing and entered a subsequent permanency order. The circuit court considered the permanency hearing report filed by the Lutheran Child and Family Services of Illinois (LCFS) which indicated that Kathryn had been successfully discharged from her required substance abuse treatment on December 17, 2018, despite testing positive for tetrahydrocannabinol (THC)[6] and self-reporting that she would test positive for benzodiazepines at her December 14, 2018, drug screening. The LCFS report also indicated that Raymond had tested positive for

_____

[6]THC is a cannabinoid and principal psychoactive constituent in cannabis. https://en.wikipedia. org/wiki/tetrahydrocannabinol (last visited May 29, 2020).

THC, methamphetamine, and benzodiazepines on his drug screening of December 14, 2018.[7] The circuit court's subsequent permanency order indicated that the respondents had not completed all of their service plan tasks nor made reasonable and substantial progress towards returning the minor children home. Further, the circuit court now found that the respondents had not made reasonable efforts towards returning the minor children home. The subsequent permanency order directed that the minor children remain in the custody of DCFS with a permanency goal of returning home within 12 months.

¶ 10    On June 18, 2019, Kathryn filed a motion for a change in agency stating that LCFS was not supportive of a return home goal and failed to submit a report as directed. The circuit court conducted another permanency hearing on July 11, 2019. At the hearing, the circuit court granted Kathryn's motion for a change in agency; however, LCFS filed a report on July 11, 2019, which the circuit court considered at the hearing. The LCFS report indicated that both of the respondents had successfully completed their substance abuse services but had not participated in several random drug screenings due to their work schedules. The LCFS report also indicated that Kathryn was successfully discharged from mental health services on May 7, 2019, but that Raymond had not yet begun his recommended mental health services. According to the LCFS report, Kathryn was currently employed, but Raymond reported that he was "let go" from his employment due to leaving work to complete a random drug screening. The circuit court again found that the respondents had not completed all of their service plan tasks nor made reasonable and substantial progress towards returning the minor children home, but

_____

[7]The LCFS report incorrectly listed the date of Raymond's drug screening as December 14, 2019.

did find that the respondents had made reasonable efforts during this period towards returning the minor children home. The circuit court directed that the minor children remain in the custody of DCFS with a permanency goal of returning home within 12 months.

¶ 11    Caritas Family Solutions (CFS) replaced LCFS as the agency involved with the respondents and the minor children. CFS filed a permanency hearing report with the circuit court on September 10, 2019. The CFS report indicated that Kathryn was unsatisfactory in her compliance with her substance abuse requirements. The report noted Kathryn had been reassessed and that it was determined that she did not meet the criteria for substance abuse treatment. The report also indicated that Kathryn's drug screenings completed on June 18, 2019, and July 9, 2019, came back negative for all substances. Kathryn, however, failed to appear for her drug screenings on August 6 and 14, 2019, and her August 20, 2019, drug screening had pending results due to being positive for cocaine. The CFS report also indicated that Kathryn was unsatisfactory in her compliance with her mental health counseling requirements. The report noted that Kathryn had been reassessed on July 2, 2019, due to "failure to appear" on too many occasions and, as such, Kathryn's compliance in mental health counseling services had been too sporadic to achieve satisfactory progress. Kathryn also received unsatisfactory compliance for employment and housing. According to the CFS report, Kathryn was currently employed but had been employed by three different employers in two months and had not demonstrated employment for a substantial period of time. The report also indicated that

Kathryn was currently living in a one-bedroom apartment with her mother and, as such, had not been able to obtain and maintain appropriate housing.

¶ 12　The CFS report of September 10, 2019, indicated that Raymond was unsatisfactory in his compliance with his substance abuse requirements. The report stated that Raymond had tested positive for THC on December 6, 2018, and positive for THC and cocaine on June 6, 2019. Raymond's drug screening conducted on June 18, 2019, was negative for all substances; however, Raymond failed to appear for his drug screenings on August 6 and 14, 2019, and his drug screening completed on August 20, 2019, had pending results due to being positive for cocaine. The report also indicated that Raymond was rated unsatisfactory in compliance with his mental health requirement since he had not engaged in a mental health assessment. Finally, the CFS report indicated that Raymond was rated unsatisfactory in his compliance with his employment task due to the length of his current employment and that Raymond rated unsatisfactory in his compliance with his housing task because he was living with his mother-in-law in a one-bedroom apartment and had not been able to obtain and maintain appropriate housing.

¶ 13　All of the above reports by LCFS and CFS rated the respondents as satisfactory in parenting. The reports indicated that the respondents displayed appropriate parenting skills and consistently visited with the minor children. The respondents were noted as having interacted appropriately with the minor children and that all three minor children appeared to be happy when spending time with their parents.

¶ 14　On September 10, 2019, the circuit court conducted another permanency hearing and entered a subsequent permanency order. The circuit court considered the CFS report

7

discussed above and found that the respondents had not completed all of their service plan tasks nor made reasonable and substantial progress towards returning the minor children home. Further, the circuit court count found that the respondents had not made reasonable efforts towards returning the minor children home. The circuit court directed that the minor children remain in the custody of DCFS with a permanency goal of returning home within 12 months.

¶ 15   The circuit court conducted the next permanency hearing on December 3, 2019. CFS filed a permanency hearing report the same day. The CFS report indicated that Kathryn had failed to appear for her drug screenings on September 6 and 16, 2019, and November 1 and 8, 2019, and that Kathryn's drug screenings completed on September 10 and 30, 2019, and October 10, 2019, were positive for cocaine. As such, the CFS report indicated that Kathryn received an unsatisfactory rating for her substance abuse requirements. Kathryn was also rated unsatisfactory in her compliance with her mental health task since Kathryn had missed several appointments and was last seen by a mental health counselor on July 30, 2019. Finally, Kathryn received unsatisfactory ratings for employment and housing for the same reasons stated in the CFS report of September 10, 2019.

¶ 16   The CFS report went on to indicate that Raymond had failed to appear for his drug screenings on September 6 and 16, 2019, October 18, 2019, and November 1 and 8, 2019, and that his drug screenings completed on September 10 and 30, 2019, and October 10, 2019, were positive for cocaine. As such, the report indicated that Raymond received an unsatisfactory rating for his compliance with his substance abuse requirements.

Raymond also received an unsatisfactory rating for mental health since he had still not engaged in a mental health assessment, and unsatisfactory ratings for employment and housing for the same reasons stated in the CFS report of September 10, 2019. The CFS report of December 3, 2019, changed the permanency goal recommendation from returning home within 12 months to substitute care pending court determination on termination of parental rights due to insufficient progress by the respondents throughout the case towards the return home goal.

¶ 17 The circuit court considered the CFS report of December 3, 2019, at the permanency hearing conducted the same day. The circuit court again determined that the respondents had not completed all of their service plan tasks nor made reasonable and substantial progress towards returning the minor children home. The circuit court further found that the respondents had not made reasonable efforts towards returning the minor children home. As such, the circuit court determined that the appropriate permanency goal was substitute care pending a determination of whether the respondents' parental rights should be terminated.

¶ 18 Also, on December 3, 2019, the State filed a petition for termination of parental rights and for appointment of guardian with power to consent to adoption (petition for termination). The petition for termination stated that the minor children were adjudged neglected and a dispositional order was entered on July 10, 2018. The petition for termination alleged that both respondents were unfit persons pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)), because they (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor

9

children; (2) had an addiction to drugs and an ongoing pattern of drug use; and (3) failed to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of neglect on July 10, 2018, through the date of the filing of the petition for termination.

¶ 19   On January 30, 2020, CFS filed a best interests report. Along with the previously noted positive drug screenings, the CFS report indicated that Kathryn had tested positive for cocaine on her drug screenings conducted on December 26, 2019, and January 10, 2020, and tested positive for cocaine on a hair follicle test taken on January 17, 2020. The report also indicated that Kathryn had failed to make several of her biweekly mental health appointments, although she was seen by her psychiatrist on a monthly basis to monitor her medication. According to the report, Kathryn failed to maintain consistent employment for a substantial period of time due to having six different employers since July 2019, but that Kathryn was able to obtain appropriate housing having moved with her mother to a three-bedroom apartment.

¶ 20   Concerning Raymond, the CFS best interests report indicated that along with the previously noted positive drug screenings, he tested positive for cocaine on a hair follicle test taken on January 17, 2020. The report also indicated that Raymond had not engaged in any mental health assessment and that his employment was unsatisfactory due to his failure to maintain employment for a substantial period. Within the employment section, the CFS report did note that Raymond had not been able to work due to a broken thumb, but also stated that Raymond failed to schedule his recommended physical therapy appointment. As with Kathryn, the CFS report indicates that Raymond was able to obtain

10

appropriate housing having moved with his mother-in-law to a three-bedroom apartment. Both of the respondents were again rated as satisfactory on parenting and reported as having consistently visited with the minor children and that the minor children appeared to be happy when spending time with their parents.

¶ 21 The circuit court conducted a fitness hearing immediately followed by a best interests hearing on February 4, 2020. Tiffany Yinger was the only witness called by the parties at both hearings. At the fitness hearing, Tiffany testified that she was a foster care case manager employed by CFS and that she had been assigned to the case involving the minor children since July 17, 2019. According to Tiffany's testimony, the minor children came into DCFS care on April 17, 2018, when Kathryn self-reported her use of cocaine. Tiffany stated that Raymond also admitted to using cocaine at that time. Tiffany stated that, prior to the respondents' reported cocaine use in April 2018, the respondents had an approximate three-year history with her department due to T.S. being born a substance exposed infant.

¶ 22 Tiffany testified that Kathryn had successfully completed substance abuse treatment and that Kathryn's drug screenings had been negative for all substances from July to November 2018. Tiffany stated, however, that Kathryn's drug screening on December 14, 2018, was "possible for benzo's" and that Kathryn failed to appear for her drug screenings on March 7, 2018, April 21, 2019, May 17, 2019, June 6, 2019,[8] August 6, 2019, August 14, 2019, September 6, 2019, September 16, 2019, November 1, 2019,

---

[8]On April 29, 2019, May 7, 2019, and May 17, 2019, Tiffany testified that the drug screening services had been denied and that the denial could have been due to a number of reasons, but was not the fault of the individual.

11

and November 8, 2019. According to Tiffany, the reason Kathryn provided for the missed drug screenings was her work schedule.

¶ 23    Tiffany went on to state that Kathryn's drug screenings were negative for all substances on June 18, 2019, and July 9, 2019, but that Kathryn's drug screening on August 20, 2019, tested positive for cocaine, amphetamines, and methamphetamines. Tiffany stated that on August 26, 2019, September 10, 2019, September 30, 2019, October 10, 2019, December 26, 2019, and January 10, 2020, Kathryn's drug screenings were positive for cocaine. Tiffany also testified that Kathryn's hair follicle test taken on January 7,[9] 2020, was positive for cocaine.

¶ 24    Concerning Kathryn's mental health, Tiffany stated that Kathryn did complete her assessment, but that Kathryn only sporadically complied with her mental health treatment. Tiffany testified that Kathryn informed her that Kathryn was missing her counseling sessions due to work. Tiffany did acknowledge that Kathryn had fully complied with her psychiatrist appointments and medication. Tiffany stated that Kathryn's employment was sporadic, having been employed with six different employers within the last six months, but acknowledged that Kathryn had obtained stable housing in December 2019. According to Tiffany, Kathryn also completed her integrated assessment task. Tiffany stated that she believed that, overall, Kathryn was cooperative with CFS. Tiffany also testified that she believed that Kathryn loved and cared for the minor

---

[9]Tiffany testified that Kathryn's hair follicle test was taken on January 7, 2020, but the CFS report filed on January 30, 2020, indicated that the hair follicle test was conducted on January 17, 2020.

children; however, it was Tiffany's opinion that Kathryn's substance abuse affected the safety of the minor children.

¶ 25    Tiffany went on to testify regarding Raymond's compliance with his service plan. Tiffany stated that Raymond had successfully completed substance abuse treatment in June 2019, but then failed to be reassessed when requested to do so. Tiffany testified that on January 26, 2018, Raymond tested positive for THC and that on December 14, 2018, Raymond tested positive for methamphetamines and benzodiazepines. On March 7, 2019, April 21, 2019, May 17, 2019, July 9, 2019, August 6, 2019, August 14, 2019, September 6, 2019, February 18, 2019, November 1, 2019, November 8, 2019, and February 18, 2019, Raymond failed to appear for his drug screenings. Tiffany stated that Raymond informed her that the reason for the missed drug screenings was due to either work or transportation. Tiffany testified that on June 16, 2019, and August 20, 2019, Raymond tested positive for THC and cocaine, and on September 10, 2019, September 30, 2019, and October 10, 2019, Raymond positive for cocaine. According to Tiffany, Raymond's drug screenings conducted on June 18, 2019, September 16, 2019, and December[10] tested negative for all substances. According to Tiffany's testimony, Raymond also had a hair follicle test taken on January 20, 2020, which was positive for cocaine. Tiffany initially testified that Raymond's hair follicle test was conducted on January 17, 2020, but when asked to confirm the date, Tiffany stated January 20, 2020.

---

[10]Tiffany did not state a specific date(s) in December 2019, only that Raymond was clean for all substances in December.

13

¶ 26 Concerning Raymond's mental health, Tiffany stated that she usually gave parents a choice where to attend mental health treatment and that Raymond had indicated to her that he had participated in a mental health assessment and treatment at a certain facility. However, Tiffany stated that she was never able to confirm the assessment or any treatment at that facility and therefore could not verify whether Raymond had complied with his mental health requirement. Tiffany testified that Raymond had completed his integrated assessment task, but that he had been inconsistently employed and was not currently employed. Tiffany stated that Raymond resided with Kathryn and her mother and that, overall, Raymond had been compliant with CFS.

¶ 27 Concerning both respondents, Tiffany stated that it was her opinion that the respondents were unfit persons because they failed to correct the issues that brought the minor children into care initially. Tiffany also testified that the respondents had been inconsistent in their sobriety and sporadic in their involvement in the services.

¶ 28 Upon completion of Tiffany's testimony, the circuit court stated:

"In regards to the fitness portion, when the Service Plan is developed you can't just show reasonable progress and reasonable effort as to parts of it, it has to be all of them.

For both of you, substance abuse is a big issue. Now, technically by law I'm supposed to presume that if you fail to appear you would have came back positive, but in this case here I'm not going to go ahead and do that because even through there was a lot [of drug screenings] where you guys didn't show up, the fact of the matter is, it could have been because of

14

work, so I'm not going to hold those against you. Unfortunately, there is enough positive for ones where you did show up, which is a concern to the Court, especially with the last one on January 17th, 2020, when you did the hair follicle test you both came back positive for Cocaine."

¶ 29    The circuit court found, by clear and convincing evidence presented and in regard to all three minor children, that respondents were unfit persons due to having an addiction to drugs and having shown an inability and unwillingness to refrain from the use of drugs, the frequent indulgence of which had instilled in the respondents a habitual craving that had manifested in an ongoing pattern of drug use. The circuit court also found respondents to be unfit persons for having failed to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect.

¶ 30    The circuit court then conducted a hearing to determine the best interests of the minor children. Tiffany Yinger was again the only witness called by the parties. The circuit court took judicial notice of Tiffany's prior testimony and any facts presented in the fitness hearing. Tiffany testified at the best interests hearing that the minor children currently resided with their maternal aunt and had resided there since April 17, 2018. Tiffany stated that she had observed the minor children in the home and that the minor children had their own room, own things, and felt it was their home. Tiffany stated that the home met minimum DCFS requirements and that the minor children's foster parent was able to meet the needs of the minor children.

¶ 31 Tiffany further testified that the foster parent had signed permanency commitments and was willing to adopt the minor children. According to Tiffany's testimony, the minor children have half-siblings that reside with Raymond's mother and that the minor children currently visit with their grandmother and half-siblings. Tiffany stated that it was her opinion that the foster parent would continue to be supportive of a relationship with the paternal grandparent and half-siblings. Tiffany, however, did not believe that the foster parent would be supportive of continued relationship between the respondents and the minor children because the foster parent and the respondents "get angry with each other" and "don't get on each other's parenting techniques, their styles."

¶ 32 Tiffany stated that she had spoken with the oldest minor child concerning the best interests hearing and that he had expressed a desire for "permanency" and to not "deal with me anymore," but that the oldest minor child had stated that he wanted to be with his parents. Regardless of the oldest minor child's desire, Tiffany believed that it would not be detrimental to the minor children if the respondents' parental rights were terminated, because the minor children have had consistent parenting, consistent housing, and have been consistently cared for since being placed with the foster parent. It was Tiffany's opinion that respondents' parental rights should be terminated and that the minor children be freed for adoption so that they could receive a permanent home, stabilization, and be free of respondents' substance abuse jeopardizing their safety.

¶ 33 Upon completion of Tiffany's testimony, the circuit court requested a recommendation from the minor children's guardian *ad litem*. The guardian *ad litem* informed the circuit court that he was looking at two main factors—the minor children's

need for stability and their need for permanency. The guardian *ad litem* acknowledged that the minor children had a bond with the respondents, but still believed it to be in the minor children's best interest to terminate the respondents' parental rights.

¶ 34　The circuit court then made the following finding:

"[B]ased upon the evidence presented to this Court and the recommendation of the Guardian Ad Litem, the Court finds that the State has proved by a preponderance of the evidence that it's in the best interests and welfare of the minors and public that all parental rights and residual parental rights flowing to and through the respondents [Kathryn and Raymond full names] with respect to the minors are hereafter permanently terminated."

¶ 35　That same day, February 4, 2020, the circuit court entered a written order terminating respondents' parental rights. The written order indicated that the circuit court found by clear and convincing evidence that the respondents had an addiction to drugs and had shown an inability and/or unwillingness to refrain from the use of drugs and that their frequent indulgence had instilled in them a habitual craving that manifested in an ongoing pattern of drug use. The written order also indicated that the circuit court determined that the respondents had failed to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect, specifically July 10, 2018, through the date of the filing of the termination petition, and that the respondents failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor children. As such, the

circuit court found each respondent to be an "unfit person" and, by a preponderance of the evidence, that it was in the best interests of the minor children that the respondents' parental rights be terminated. The circuit court then terminated the respondents' parental rights and vested guardianship of the minor children with DCFS.

¶ 36    The respondents now appeal. Kathryn argues that the State failed to prove that she was an unfit person for having an addiction to drugs and failed to prove that she did not make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect. Raymond argues that the circuit court erred in finding him an unfit person and that the State failed to prove that the termination of his parental rights was in the best interests of the minor children.

¶ 37                                    II ANALYSIS

¶ 38    Before proceeding to an analysis of the issues raised on appeal, we note that pursuant to Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), except for good cause shown, this court is to issue a decision within 150 days after the filing of the notice of appeal. The notices of appeal were filed on February 25, 2020. Accordingly, Rule 311(a)(5) requires the decision in this case to be filed on or before July 24, 2020, and this court has complied with the Rule 311(a)(5) filing requirement.

¶ 39                         A. Termination of Parental Rights

¶ 40    "A parent's right to raise his or her biological child is a fundamental liberty interest, and the involuntary termination of such right is a drastic measure." *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28. The Act (705 ILCS 405/1-1 *et seq.* (West 2018)), along with the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2018)), governs the

18

proceedings for the termination of parental rights. *In re D.F.*, 201 Ill. 2d 476, 494 (2002). The Act provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2018). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds of unfitness enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). 705 ILCS 405/2-29(2), (4) (West 2018); *In re D.T.*, 212 Ill. 2d 347, 352-53 (2004). Even if the State alleges more than one count of unfitness, only one count needs to be proven to find a parent unfit. *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000). If the court finds the parent unfit, the State must then show that termination of parental rights would serve the child's best interests. 705 ILCS 405/2-29(2) (West 2018); *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28.

¶ 41 A determination of parental unfitness involves factual findings and credibility assessments that the circuit court is in the best position to make, and a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *In re G.W.*, 357 Ill. App. 3d 1058, 1059 (2005).

¶ 42                                 B. Kathryn V.

¶ 43 Kathryn appeals arguing that the State failed to prove that she was unfit person for having an addiction to drugs and that the State failed to prove that she did not make

reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect. We disagree.

¶ 44    Section 1(D)(k) of the Adoption Act defines an unfit person as a parent who has an "addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding." 750 ILCS 50/1(D)(k) (West 2018). The petition for termination in this matter was filed by the State on December 3, 2019. As such, the relevant time period for the State to prove an addiction was December 3, 2018, until December 3, 2019. Kathryn acknowledges that she had positive drug screenings in August, September, and October 2019, and that the circuit court could properly consider the positive hair follicle test conducted on January 17, 2020. Kathryn asserts, however, that the testimony only established that the drug screenings were positive, and not the level of drugs or the reliability of the tests. Kathryn further maintains that the positive drug tests over a three-month period was not enough evidence to establish a habitual craving over the course of a year and that the circuit court placed too much weight on the January 17, 2020, hair follicle test.

¶ 45    An addiction to drugs means an inability or unwillingness to refrain from the use of drugs where frequent indulgence has caused a habitual craving, manifested by an ongoing pattern of drug use. *In re Precious W*., 333 Ill. App. 3d 893, 899 (2002). "[E]vidence of indulgence without intermission is not necessary to prove drug addiction. It is sufficient to show that a person has demonstrated an inability to control his or her habitual craving." *Id*. The circuit court may also consider evidence outside the one year before the filing of the petition if the State has proven an addiction by clear and

convincing evidence during the relevant one-year time period. *In re J.J.*, 201 Ill. 2d 236, 245 (2002).

¶ 46    In *In re Precious W.*, the appellate court found that evidence of a parent's two positive drug tests for cocaine during the relevant one-year time period was clear and convincing evidence that the parent was addicted to drugs since the parent had completed a drug treatment program and was aware that she would be scheduled for random drug testing. *In re Precious W.*, 333 Ill. App. 3d at 899-900.

¶ 47    In this matter, Kathryn completed her drug treatment program on December 17, 2018, and then went on to have five positive drug screenings (August 20, 2019, tested positive for cocaine, amphetamines, and methamphetamines; August 26, 2019, September 10, 2019, September 30, 2019, and October 10, 2019, positive for cocaine). Kathryn's five positive drug screenings all occurred within the relevant one-year period of December 3, 2018, to December 3, 2019, and Kathryn provides no support for her argument that the positive drug tests over a three-month period was not enough evidence to establish a habitual craving over the course of a year. As stated above, evidence of indulgence without intermission is not necessary to prove drug addiction. *Id.* at 899. The positive drug screenings were sufficient for the circuit court to determine that Kathryn had demonstrated an inability to control her habitual craving based on her continued drug use with the knowledge that such use could result in the loss of her parental rights. Further, since the State presented sufficient evidence for the circuit court to determine that Kathryn had an addiction during the relevant one-year period of time, it could

21

properly consider evidence outside the one-year period, including Kathryn's positive hair follicle test.

¶ 48    Kathryn argues that her case is analogous to *In re J.J.*, 201 Ill. 2d 236 (2002), where the Illinois Supreme Court found that there was insufficient evidence to demonstrate a parent's habitual drunkenness during the relevant one-year period where there was no evidence to indicate how often, or how much, alcohol the parent consumed. *Id*. at 252. Kathryn asserts that the testimony in this matter regarding the drug screenings only demonstrated the results of the screenings, but that the levels of drugs nor the reliability of the tests were established. We do not find that this matter and *In re J.J.* are comparable. There is no indication that the parent in *In re J.J.* was subject to random alcohol testing and failed such testing during the relevant one-year time period. As such, the analogy is not the same.

¶ 49    Kathryn was aware that she was required to complete random drug screenings and, with the knowledge that she would be tested, had five positive drug screenings within the relevant one-year period. Although the testimony in this matter did not include the level of drugs detected, the levels are irrelevant. The amounts of drugs consumed cannot not negate the basic fact that Kathryn continued her use of illegal substances. The drug screenings provided the identification of the illegal drug(s) consumed and when such drugs were detected in Kathryn's system. Therefore, the positive drug screenings, regardless of the levels, were sufficient to demonstrate Kathryn's use of illegal substances during the relevant one-year period.

¶ 50    Regarding the reliability of the drug screening tests, no objection was made during the hearing to the testimony regarding Kathryn's drug screening results or the reliability of the drug screening tests. Issues not objected to at the circuit court level or raised in a posttrial motion are forfeited for review on appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. The purpose of this rule is to encourage parties to raise their concerns in the circuit courts so that the courts have an opportunity to correct any error. *Id.* Kathryn did not raise the issue of the reliability of the drug screenings at the circuit court level and brings this issue for the first time before this court. As such, the circuit court did not have an opportunity to consider or rule on the issue of the reliability of the drug screening tests and Kathryn has forfeited this issue by failing to timely raise it in the circuit court.

¶ 51    Kathryn's positive drug screenings within the relevant one-year period were sufficient for the circuit court to determine that Kathryn could not control her habitual craving and had an addiction to drugs as alleged in the petition for termination. Because the State proved an addiction by clear and convincing evidence during the relevant one-year period, the circuit court was permitted to consider evidence outside the one year before the filing of the petition including Kathryn's hair follicle test. Therefore, we find that the circuit court's determination that Kathryn an unfit person due to her addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding, was not against the manifest weight of the evidence.

23

¶ 52   Because we have determined that the circuit court's finding that Kathryn was an unfit person due to her drug addiction was not contrary to the manifest weight of the evidence, we do not need to address the issue of whether the State failed to prove that Kathryn did not make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect since only one count of unfitness needed to be proven for the circuit court to find Kathryn an unfit person. *In re J.A.*, 316 Ill. App. 3d at 564.

¶ 53                                    C. Raymond S. Sr.

¶ 54   Raymond appeals arguing that the circuit court erred in finding him an unfit person. As with Kathryn above, the circuit court found Raymond to be an unfit person for having an addiction to drugs and for failing to make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect.

¶ 55      Raymond argues that the testimony in this matter demonstrated that Raymond had successfully completed his substance abuse treatment and that his most recent drug screening in December 2019 was negative for all substances. Raymond also argues that the circuit court failed to recognize that Tiffany testified to the wrong date of Raymond's hair follicle test. According to Raymond, his hair follicle test was not completed on January 17, 2020, but was completed on January 17, 2019, over one year prior to the hearing. As such, Raymond argues that the hair follicle test was a major factor in the circuit court's finding of unfitness and was based upon an incorrect date.

¶ 56   Concerning the date of Raymond's hair follicle test, Tiffany testified as follows:

24

"Q. Next drop?

A. 11-8-19.

Q. Results?

A. Fail to appear.

Q. Next drop?

A. I did not—it's not in the report, however, in December he was clean for all substances until I dropped him on 1-17-20 for hair follicle testing, which came back positive for Cocaine with a 22,000 result.

***

Q. What was the date of the hair follicle?

A. 1-20-19."

¶ 57    We have reviewed the testimony and the common law record. We would note that the CFS reports of January 30, 2020, and February 4, 2020, indicated that Raymond's hair follicle test was conducted on January 17, 2020. Also, the CFS report of December 3, 2019, indicates that the caseworker had requested approval from DCFS for hair follicle testing of Raymond. Therefore, it is likely that Tiffany initially testified to the correct date of January 17, 2020, and then incorrectly testified to the January 20, 2019, date. However, we note that Raymond states his hair follicle test was conducted on January 17, 2019. For the purpose of our analysis, we will accept Raymond's contention that his hair follicle test was conducted on January 17, 2019. We do so because the relevant one-year period for the State to prove Raymond's addiction was December 3, 2018, until

25

December 3, 2019, which places Raymond's hair follicle test, that was positive for cocaine, within the relevant period.

¶ 58   The evidence established that Raymond completed his substance abuse services on April 17, 2018, and then failed to be reassessed when requested to do so. Even if we disregard the hair follicle test, Raymond tested positive for THC on December 6, 2018, positive for THC and cocaine on June 6, 2019, and positive for cocaine on August 20, 2019, September 10, 2019, September 30, 2019, and October 10, 2019.

¶ 59   For the same reasons discussed above regarding Kathryn's unfitness, Raymond's six positive drug screenings within the relevant one-year period were sufficient for the circuit court to determine that Raymond could not control his habitual craving and had an addiction to drugs as alleged in the petition for termination. Therefore, we find that the circuit court's determination that Raymond was an unfit person due to his addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding, was not against the manifest weight of the evidence.

¶ 60   Again, only one count of unfitness needed to be proven for the circuit court to find that Raymond was an unfit person. *In re J.A.*, 316 Ill. App. 3d at 564. Because we have determined that the circuit court's finding that Raymond was an unfit person due to his drug addiction was not contrary to the manifest weight of the evidence, we do not need to address the issue of whether the State failed to prove that Raymond did not make reasonable progress towards the return of the minor children during any nine-month period following the adjudication of abuse or neglect.

¶ 61 Raymond also argues that the State failed to prove that the termination of his parental rights was in the best interests of the minor children. Raymond states that he never missed his visitation with the minor children and that the testimony established that he was engaged and met the needs of the minor children. Raymond further argues that he has a strong bond with the minor children and that the oldest child had expressed a desire to remain with his parents. Raymond states that the foster parent does not desire to maintain the relationship between the minor children and Raymond and, as such, the minor children would be harmed if contact with Raymond was terminated.

¶ 62 In determining the best interests of the child, the trial court must consider the following statutory factors in the context of the child's age and developmental needs: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments, including where the child feels love, attachment, and a sense of being valued, the child's sense of security, the child's sense of familiarity, the continuity of affection for the child, and the least disruptive placement alternative for the child; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, which includes a need for stability and continuity of relationships with parent figures, siblings, and other relatives; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2018). The court is not required to make specific findings of fact concerning the best interests factors as long as there is some indication in the record that

it considered the enumerated factors when making the best interests determination. *In re Marriage of Stribling*, 219 Ill. App. 3d 105, 107 (1991).

¶ 63 In this matter, after carefully reviewing the record and in light of the best interests factors that must be considered, we do not find that the circuit court's determination to terminate Raymond's parental rights was against the manifest weight of the evidence. The circuit court heard the testimony regarding the bond the minor children shared with Raymond and the foster parent's lack of desire to continue that relationship. The circuit court also heard the testimony regarding the desires of the oldest minor. The circuit court, however, also heard testimony regarding the minor children's current home, stability, permanency, and the concerns for the minor children's safety and welfare due to Raymond's substance abuse. The circuit court, having observed the witness and heard the testimony, is in a better position to weigh this evidence. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 66. Raymond does not allege, nor does the record indicate, that the circuit court failed to consider the enumerated factors when making the best interests determination. The circuit court evaluated the testimony related to the above considerations and found that they did not outweigh the evidence in favor of termination by a preponderance of the evidence.

¶ 64 The record demonstrates that Kathryn and Raymond have a strong bond with the minor children, and have consistently maintained contact and interaction with the minor children. The record also demonstrates, however, that Kathryn and Raymond have not been able to cease their illegal drug use and provide a safe and stable home for the minor children. Based on the above analysis, we find that the circuit court's judgment that

28

respondents were unfit persons and that termination of their parental rights was in the minor children's best interests was not contrary to the manifest weight of the evidence.

¶ 65                               III. CONCLUSION

¶ 66   Based on the foregoing, we affirm the judgment of the circuit court.


¶ 67   Affirmed.